GROVEY *v.* WASHINGTON NATIONAL INSURANCE COMPANY.

4-5145

Opinion delivered July 4, 1938.

R. M. Ryan, Leo P. McLaughlin, M. W. Gannaway and R. E. Wiley, for appellant.

H. N. Lukins, R. J. Wetterlund, J. K. Mahony, T. K. Martin and Rose, Hemingway, Cantrell & Loughborough, for appellee.

McHANEY, J. Appellant brought this action against appellee to recover damages for the alleged breach of two general agency contracts with it. By one of said contracts, he was appointed agent to sell life insurance policies issued by appellee and by the other he was appointed agent to sell accident and health policies. Appellant is a resident of the state of Illinois and appellee is a corporation of the same state, duly authorized to trans-

act business in this state as a foreign corporation. In apt time, appellee filed a petition and bond for removal to the federal court and a removal order was made by the circuit court. Thereafter, the case was remanded to the state court on the motion of appellant so to do by order of the federal district court. The contracts in question were general agency contracts, covering the states of Missouri, Kansas, Oklahoma, Texas and portions of the state of Arkansas in which appellee was willing to accept risks. Summons was served upon appellee's agent in Garland county, Arkansas.

After the case had been remanded, appellee appeared specially and moved to quash the service and dismiss the action on the ground that the court had no jurisdiction of a cause of action between nonresidents for breach of a contract not made in Arkansas. The court sustained the motion, dismissed the cause of action and the case is here on appeal.

Appellant states the question for decision by this court as follows: "Will the Arkansas court entertain jurisdiction of an action by a nonresident against a foreign insurance company authorized to do business in Arkansas for breach of a general agency contract made outside of Arkansas, but to be performed partly within Arkansas?"

Appellee has complied with all of the laws of this state relating to the transaction of business in this state by foreign insurance corporations, one of which was the filing of a stipulation that any legal process affecting the company may be served on the Insurance Commissioner of Arkansas or upon its designated agent named therein. This court has held that service may be obtained on foreign insurance corporations by service on its soliciting agent residing in the county where the suit is filed.

The trial court held that the case is controlled and ruled by that of *National Liberty Insurance Company* v. *Trattner*, 173 Ark. 480, 292 S. W. 677, and we agree with the trial court in this holding. In that case, Trattner brought suit against the insurance company to recover on fire insurance policies covering stock and fixtures in the total sum of $12,000. The goods and fixtures, at the

time of the issuance of the policies and the loss, were located in a store in St. Louis, where the plaintiff lived and where the policies were issued. The insurance company was a foreign corporation, authorized to do business in this state and it appeared specially for that purpose and filed a motion to quash service, but the trial court overruled the motion to quash and on appeal this court reversed that judgment. The late Mr. Justice KIRBY, speaking for the court, after citing and quoting from *American Casualty Co.* v. *Lea,* 56 Ark. 539, 20 S. W. 416, said: ''In the other Arkansas cases cited, wherein judgment was rendered upon causes of action arising outside of the state, all the parties were either not nonresidents of the state or no proper objection was made to the jurisdiction of the court on that account; in other words, the precise question raised by this motion to quash the service has not been heretofore involved or decided in any cause determined by this court.

''At the common law, corporations could not be sued out of the state of their domicile under the laws of which they were created or organized.

''This is a transitory action, it is true, which, under the common-law rule, could be brought in any jurisdiction where the defendant could be found or lawfully summoned to appear, and a recovery could have been had here had the insurance company voluntarily appeared and defended, without objection to the jurisdiction of the court. Timely objection was interposed, however, and insisted upon throughout the proceedings in the trial court, and this court is now urged to reverse the judgment of the lower court for erroneously holding that service of summons could be effectively made upon appellants within this jurisdiction.

''The state has no special interest in enforcing the rights of citizens and residents of other states on causes of action arising outside its boundaries against foreign corporations doing business in the state, but is chiefly interested in administering justice under the forms of law, to all persons entitled to seek remedies in its courts, for protection and enforcement of their rights, and for

redress of injuries and wrongs, promptly and without delay.

"A fair construction of our law under the provisions of which foreign corporations are authorized to do business in the state upon the appointment of an agent upon whom process can be served, made primarily to secure local jurisdiction in respect of contracts made and business done within the state, would seem to require only that such corporations shall be subject to suit for any liability arising from or growing out of contracts made or business done in the state or necessarily incident thereto, and not that they shall be required by service of summons upon said agent to be subjected to suits of nonresidents of the state upon foreign causes of action, transactions and causes of action arising outside the state and in no wise incident, related to, or connected with contracts made or business done in the state.

"The Legislature (quoting syllabus) is presumed to intend that its statutes shall not apply to acts or contracts done or effected beyond the limits of the state, and having no reference to or effect upon persons or property in this state. *State* v. *Lancashire Fire Ins. Co.*, 66 Ark. 466, 51 S. W. 633, 45 L. R. A. 348.

"We are not unmindful of the decisions of the courts of other states holding a different view and giving larger scope to statutes of like kind in their construction, but we do not think comity requires that our courts shall be unduly burdened with litigation of actions of nonresidents against foreign insurance corporations doing business here, upon causes of action arising entirely outside of our jurisdiction and having no relation whatever to the contracts made or business done by such foreign corporation within the state, under the requirements of our laws providing therefor.

"The Supreme Court of the United States, which follows the construction of such statutes put upon them by the courts of the state of their enactment, has expressed a leaning toward such construction of like statutes as that made by this court of the statute under consideration herein. In *M. P. Rd. Co.* v. *Clarendon Boat Oar Co.*, 257 U. S. 533, 42 S. Ct. 210, 66 L. ed. 354, Chief

Justice TAFT, for the court, said: 'In dealing with statutes providing for service upon foreign corporations doing business in the state upon agents whose designation as such is especially required, this court has indicated a leaning toward a construction, where possible, that would exclude from their operation causes of action not arising in the business done by them in the state.' "

It may be conceded that the case at bar differs from the Trattner case in this, that here the contracts in question were to be partly performed in Arkansas. But as we view it, this difference is not substantial. While such portions of Arkansas as appellant saw fit to accept business from were covered by the contracts, still they do not arise out of business done on contracts made in Arkansas. In other words, the contracts in suit being made outside of the state by nonresidents of the state, have no relation to any business transacted by appellee in this state. No policyholder is or could be interested in these contracts, which were made, as we understand it, while appellant was a citizen of Oklahoma, but perhaps made, signed and delivered in the state of Illinois, where both appellant and appellee are now residents. They relate to commissions which appellant might or might not earn in the states named, including Arkansas, if appellee saw fit to accept any business from Arkansas. Appellee resided in Dallas, Texas, at the time of the alleged breach. The record discloses that he thereafter came to Arkansas, claimed to be a citizen of this state, and brought suit in the Ouachita circuit court on the same or a similar complaint as the one now before the court, for damages for the alleged breach of said contracts. The record discloses that that case was removed to the federal district court at El Dorado and trial resulted in a hung jury. He thereafter abandoned this suit, moved to Belleville in the state of Illinois, and thereafter brought this suit in the circuit court of Garland county, all of which was apparently done for the purpose of preventing a removal to the federal court. Conceding that he had the right to do this, where the court otherwise had jurisdiction of the subject-matter, we cannot agree that the courts of this state should be made the dumping ground of litigation

properly triable elsewhere. In the Trattner case, Judge KIRBY quoted a syllabus from *State* v. *Lancashire Insurance Company,* 66 Ark. 466, 51 S. W. 633, 45 L. R. A. 348, that, ''The Legislature is presumed to intend that its statutes shall not apply to acts or contracts done or effected beyond the limits of the state, and having no reference to or effect upon persons or property in this state.'' We understand that the statute relating to service on foreign insurance companies was enacted primarily for the purpose of giving the courts of this state jurisdiction in respect to contracts made and business done within the state or necessarily incident thereto. Certainly the contracts in question were not made in the state nor do they relate to business done within the state, and it cannot be said that they are necessarily incident thereto. There was no property and no person in Arkansas affected by the contracts. They were not insurance contracts. They were agency contracts and they do not arise out of any business done in this state.

Appellant relies upon *American Railway Express Co.* v. *Rouw Co.,* 173 Ark. 810, 294 S. W. 401, where the court declined to follow the Trattner case because the plaintiff was a resident and citizen of Arkansas at the time the cause of action arose, and at the time the suit was filed. There, the court used this language: ''But certainly it accords with the public policy of the state to conserve the rights of its own citizens and to enable them to maintain any cause of action they may have against foreign corporations in our own tribunals, if service can be had upon them in this state. . . . Refusing jurisdiction in such cases to nonresident plaintiffs against nonresident defendants is one thing. Refusing jurisdiction to resident plaintiffs against nonresident defendants is altogether a different thing.'' Reliance is, also, placed upon the decision in *Yockey* v. *St. Louis-San Francisco Railway Co.,* 183 Ark. 601, 37 S. W. 2d 694. There, the plaintiff, a resident of Missouri, was injured in Missouri and brought his action against the railroad company, a foreign corporation doing business in Arkansas, in Crawford county in this state. There, the court declined to apply the rule in the Trattner case again and distin-

guished it in this language: "In the instant case, the facts are essentially different. The defendant owns and operates a line of railroad in this state, and has voluntarily placed agents here in the conduct of its business who are authorized to receive service of summons under our statute. It has become in all essential respects a domestic corporation, in so far as transacting business in this state is concerned. The right of action to the plaintiff was transitory, and it is not a question whether the laws of the state of Arkansas have any extraterritorial force."

It differs from the instant case in many respects. There, it owned a line of railroad in the state, had become, as the court said, in all essential respects a domestic corporation. Here, appellee owned no property in this state, even though appellant contends that it does, because it had premiums coming due from policyholders in this state. But unpaid premiums are not property. They may never be paid. It maintains no place of business in this state. It has soliciting agents, but they furnish their own place of business, work only when they wish to do so and receive a commission on business written. Such applications as they receive are transmitted to the home office for acceptance or rejection. We think this distinction is clearly illustrated by the comments of the late Chief Justice HART, speaking for the court in the Yockey case with reference to the decision of the Supreme Court of the United States in *Davis* v. *Farmers' Co-operative Equity Co.*, 262 U. S. 312, 43 S. Ct. 556, 67 L. Ed. 996, where he said: "In the last case cited, the Supreme Court of the United States said that the statute compelled every foreign interstate carrier to submit to suit there as a condition of maintaining a soliciting agent within the state, although it did not operate any kind of railroad in the state. The statute did not limit the jurisdiction to suits arising out of business transacted in the state of Minnesota, but made the service on the agent sufficient for business transacted outside of the state with nonresidents of the state. The court recognized in that case that, ordinarily, effective administration of justice did not require that a foreign corporation should

submit to a suit in a state in which the cause of action did not arise, in which the transaction giving rise to it was not entered upon, in which the carrier neither owned nor operated a railroad, and in which the plaintiff did not reside. Hence the court said that such general submission to a suit unreasonably obstructed and unduly burdened interstate commerce.''

In the Davis case, the railway company had no line of railroad in Minnesota, no station agents and no stations, but it did have soliciting agents in the state who solicited business for the railway company, just as appellee has here, but it was held that service on a soliciting agent would not be sustained in an action by a nonresident against a foreign corporation on a cause of action arising out of that state. Counsel for appellant also cite and rely upon *Scottish Union & National Insurance Company* v. *Hutchins,* 188 Ark. 533, 66 S. W. 2d 616, and the *Pacific Mutual Life Ins. Co.* v. *Henry,* 188 Ark. 262, 65 S. W. 2d 32. In the former, a resident of Arkansas was the plaintiff, while in the latter there was no question of the right of the plaintiff to maintain the suit as he was a resident of the state, the only question being one of venue.

A further contention made by appellant is that this court cannot refuse jurisdiction in this case without violating Art. IV, § 2, of the Constitution of the United States, which provides: ''The citizens of each state shall be entitled to all the privileges and immunities of the citizens of the several states.'' We cannot agree with appellant in this contention. We cannot undertake an extended review of the cases cited by the parties as it would unduly extend this opinion to do so. The effect of our holding in the Trattner case was against the contention made. The following is taken from 7 R C. L., p. 1035, where it was said: ''But in actions between nonresidents based on a cause of action arising outside the state, the courts are not obliged to entertain jurisdiction. They may and usually do so on principles of comity, but not as a matter of strict right. In other words, it lies within the discretion of the courts whether or not they will entertain such a transitory action. As

the retention of jurisdiction is discretionary with the courts, it is impossible to state any rule that may be relied on in a particular case, but a few illustrations of a general nature will serve to indicate the general limitations of that discretion. . . .

"The rule that a court of one jurisdiction may in its discretion refuse to entertain a case between nonresidents on a cause of action arising outside the state has sometimes been limited to actions between aliens and its application to actions between citizens of another state in the Union denied. According to this view the Constitution of the United States guarantees to a citizen of one state the same right and privilege to prosecute an action in another that a citizen of the latter would have, and the residence or domicile of the parties is of no importance whatever. Accordingly it has been held that a court has no discretion to refuse to hear a case between nonresidents of which it has jurisdiction merely because the suit is brought there only for convenience of parties and attorneys, and will entail expense upon the county. This limitation, however, is sustained only by a few courts and it seems to be contrary to both precedent and reason."

Our conclusion is that the trial court correctly quashed the service, and its action in doing so is, therefore, affirmed.

MEHAFFY, J., dissents.